OPINION
{¶ 1} Defendant-appellant Dante DeJohn appeals his conviction and sentence from the Perry County Municipal Court on one count of driving while under the influence of alcohol. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 10, 2005, appellant was charged with driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and4511.19(A)(1)(e), failure to wear a safety belt in violation of R.C.4513.263(B)(1), driving left of center in violation of R.C. 4511.25, and a marked lanes violation in violation of R.C. 4511.33. Appellant also was charged with having an open container in violation of R.C.4301.62(A)(4). At his arraignment, appellant pleaded not guilty to all of the charges.
 {¶ 3} On June 8, 2005, appellant filed a Motion to Suppress. Appellant, in his motion, alleged, in part, that there was not substantial compliance with Ohio Department of Health Regulations concerning urine testing. Appellant maintained, in part, that appellee had failed to prove that appellant's urine specimen was refrigerated while not in transit or under examination as required by O.A.C. 3701-53-05(F).
 {¶ 4} A hearing on appellant's Motion to Suppress was held on December 20, 2005. The following testimony was adduced at the hearing.
 {¶ 5} Ohio State Highway Patrol Trooper Don Kelley was on duty on May 10, 2005, when he observed appellant commit several traffic violations. The trooper stopped appellant at 8:35 p.m. and placed him under arrest for driving under the influence after getting "several indicators of impairment." Transcript at 4.
 {¶ 6} While at the police station, appellant was asked to submit a urine sample. The urine sample was taken at 10:18 p.m. Trooper Kelley testified that after appellant submitted the sample, he placed a preservative in the bottle, sealed the top of the cap, and then placed the sample into a mailing package. The trooper did not mail the sample until the next day at approximately 3:30 p.m. since he went off duty shortly after the sample was taken. The sample remained in the trooper's possession from the time it was collected until it was placed into the mailing package.
 {¶ 7} On cross-examination, Trooper Kelley testified that the urine sample remained in his locked patrol car until it was mailed and that the sample was not refrigerated.
 {¶ 8} At the suppression hearing, Jeffrey Turnau, a criminalist with the Ohio State Highway Patrol, testified that he received appellant's urine sample on May 16, 2005. Turnau testified that the sample was sealed and contained a preservative tablet, was in the refrigerator at such time and that there was no evidence of tampering. Turnau further testified that once a preservative tablet is placed in to a urine sample, it remains in effect, to his knowledge, permanently and that, refrigeration "would slow down, inhibit alcohol production for fermentation, and bacterial growth that type of thing, . . . That's the whole point to refrigeration. It's just to act as a preservative . . ." Transcript at 20. When asked about the sample provided by appellant, Turnau testified that there was no indication of fermentation and that the sample appeared normal. According to Turnau, the sample was found to contain .240% alcohol.
 {¶ 9} As memorialized in an Entry filed on February 1, 2006, the trial court overruled appellant's Motion to Suppress. The trial court, in its Entry, stated, in relevant part, as follows: "the Court finds that based upon the testimony of the officer and also that of the criminologist, Jeffrey Turnau, that substantial compliance with the Ohio Department of Health regulations regarding the urine sample tested and taken in the present case is set forth in O.A.C. 3701-53. The Court further finds that the standards were substantially complied with and therefore the results of said test would be admissible . . ."
 {¶ 10} Thereafter, on March 14, 2006, appellant pleaded no contest to the charge of driving while under the influence of alcohol in violation R.C. 4511.19(A)(1)(e). The remaining charges were dismissed. Pursuant to a Judgment Entry filed on April 25, 2006, appellant was sentenced to 180 days, with 150 days suspended, and fined in the amount of $750.00. The trial court further ordered appellant to serve ten (10) days of actual incarceration and the remaining twenty (20) days on house arrest. Appellant also was placed on probation for a period of one (1) year and his driver's license was suspended for a period of two (2) years.
 {¶ 11} Appellant now raises the following assignment of error on appeal:
 {¶ 12} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS."
 I {¶ 13} Appellant, in his sole assignment of error, argues that the trial court erred in overruling his Motion to Suppress. Appellant specifically contends that appellee failed to establish substantial compliance with O.A.C. 3701-53-05(F) regarding urine alcohol testing. We agree.
 {¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982) 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; and State v.Guysinger, supra.
 {¶ 15} At issue in the case sub judice is whether appellee substantially complied with O.A.C. 3701-53-05 (F). O.A.C. 3701-53-05(F) states as follows: "While not in transit or under examination, all blood and urine specimens shall be refrigerated." (Emphasis added). In the case sub judice, the testimony adduced at the suppression hearing established that appellant's urine sample was not in transit, not under examination, and was not refrigerated for over seventeen (17) hours.
 {¶ 16} Recently, in State v. Mayl, 106 Ohio St.3d 207, 214,833 N.E.2d 1216, 1223, 2005-Ohio-4629, the Ohio Supreme Court stated, in relevant part, as follows: "We used the term "substantial compliance" with respect to these statutes and corresponding administrative regulations [O.A.C. — Chapter 3701-53] in State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71. `After a defendant challenges the validity of [alcohol] test results in a pretrial motion, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health.' Id. at ¶ 24. In reviewing the lower courts' interpretation of the standard, we observed: `[W]e are cognizant that if `we were to agree * * * that any deviation whatsoever from th[e] regulation rendered the results of a [test] inadmissible, we would be ignoring the fact that strict compliance is not always realistically or humanly possible.' [State v.] Plummer [1986], 22 Ohio St.3d [292] at 294, 22 OBR 461,490 N.E.2d 902. Precisely for this reason, we concluded in [State v.]Steele (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740] that rigid compliance with the Department of Health regulations is not necessary for test results to be admissible. [Id.] at 187, 6 O.O.3d 418,370 N.E.2d 740 (holding that the failure to observe a driver for a `few seconds' during the 20-minute observation period did not render the test results inadmissible). To avoid usurping a function that the General Assembly has assigned to the Director of Health, however, we must limit the substantial-compliance standard set forth in Plummer to excusing only errors that are clearly de minimis. Consistent with this limitation, we have characterized those errors that are excusable under the substantial-compliance standard as `minor proceduraldeviations.' State v. Homan (2000), 89 Ohio St.3d 421, 426,732 N.E.2d 952." Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 34." Id at paragraph 49. (Emphasis added).
 {¶ 17} In Mayl, the Ohio Supreme Court, in holding that there was substantial compliance with O.A.C. 3701-53-05 (F) even though a sample was not refrigerated for nearly one hour and 45 minutes before it was tested, noted that in Plummer, supra., it previously had held that even though a sample was not refrigerated for as much as five hours, there was substantial compliance with O.A.C. 3701-53-05(F). Id at fn 2. The Ohio Supreme Court, in Plummer, referred to a three to five hour delay from the time a urine sample was received by a laboratory until it was refrigerated as a "relatively slight delay." Id. At 295.
 {¶ 18} However, in the case sub judice, appellant's urine sample was not refrigerated for over seventeen (17) hours. We find that such a delay is not a relatively slight delay or minor procedural deviation.
 {¶ 19} Based on the foregoing, we find that the trial court erred in overruling appellant's Motion to Suppress. Appellant's sole assignment of error is, therefore, sustained.
 {¶ 20} Accordingly, the judgment of the Perry County Municipal Court is reversed and this matter is remanded to the trial court for further proceedings.
By: Edwards, J., Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Perry County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings. Costs assessed to appellee.
 NUNC PRO TUNC JUDGMENT ENTRY
For the reasons stated in our Memorandum-Opinion on file dated January 2, 2007, the appeal of the judgment of the Perry County Court of Ohio is reversed and this matter is remanded to the trial court for further proceedings. Costs assessed to appellee.
Due to clerical error, the language Perry County Court of Common Pleas has been corrected to reflect Perry County Court, therefore, this Judgment Entry shall speak and be in effect, nunc pro tunc, as of January 2, 2007, the date of the former Judgment Entry of this Court, which this Judgment Entry corrects and replaces.
IT SO ORDERED.