DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal of an order of the Lucas County Court of Common Pleas denying appellant Lance E. Kincaid's motion to suppress evidence of blood alcohol test results in a prosecution for aggravated vehicular homicide, under R.C. 2903.06(A)(1)(a) and (B), and aggravated vehicular assault, under R.C. 2903.08(A)(1)(a) and (B). *Page 2 
 {¶ 2} The charges against Kincaid relate to his operation of a motor vehicle on February 15, 2005, and involvement in a motor vehicle collision on that date. Police responding to the scene were unable to conduct a field sobriety test of Kincaid due to his injuries. He agreed, however, to provide blood samples for blood alcohol level testing at the hospital afterwards.
 {¶ 3} Kincaid filed a motion to suppress evidence of blood alcohol test results in the trial court. He argued that the blood alcohol test results were inadmissible due to failure of the state to show substantial compliance with Ohio Department of Health ("ODH") regulations regarding the collection, handling, and testing of blood specimens used to establish violation of R.C. 4511.19(A). In the trial court appellant claimed two ODH regulations were violated — Ohio Adm. Code 3701-53-05(E) (sealing and labeling of samples) and (F) (refrigeration).
 {¶ 4} On October 31, 2005, the trial court conducted a hearing on the motion to suppress. The court overruled the motion in a judgment entry filed February 15, 2006.
 {¶ 5} On March 23, 2006, Kincaid pled no contest to aggravated vehicular homicide and aggravated vehicular assault charges. The trial court sentenced him on May 10, 2006, to a five year term of imprisonment on the aggravated vehicular homicide count, a four year term on the aggravated vehicular assault account, and also suspended his driver's license for an aggregate total of 20 years.
 {¶ 6} Appellant filed this appeal of the trial court's ruling on the motion to suppress. A motion to suppress is the proper procedural means to contest admissibility of *Page 3 
blood alcohol level test results for prosecutions under R.C. 4511.19(A), where it is claimed that the testing failed to comply with ODH regulations. Defiance v. Kretz (1991), 60 Ohio St.3d 1, syllabus. Such an appeal is permitted even where the defendant has pled no contest to the criminal charges, after the motion to suppress was overruled. Id.
 {¶ 7} Appellant asserts the following on this appeal:
 {¶ 8} "The trial court did not properly apply the Ohio Department of Health Regulations when it overruled defendant's motion to suppress a blood alcohol test.
 {¶ 9} "1. Judicial interpretation of Ohio Administrative Code3701-53-05 has found that the state must prove `substantial compliance' with the Director of Health Regulations.
 {¶ 10} "2. The facts of the instant case, before this Honorable Court, cannot be considered substantial compliance under Supreme Court precedent.
 {¶ 11} "a. The blood sample was not refrigerated for a period of six months, thus violating the Ohio Administrative Code and the relevant case law promulgated by the Supreme Court of Ohio and its appellate courts.
 {¶ 12} "b. The existence of a mysterious green seal on the Appellant's blood sample constitutes tampering, which constitutes a violation of the substantial compliance standard."
 {¶ 13} We consider the foregoing as presenting two assignments of error. The first assignment of error (numbered 2a) asserts that the trial court erred in overruling the *Page 4 
motion to suppress due to a failure to substantially comply with an ODH regulation concerning refrigeration of blood samples for testing. The second assignment of error (numbered 2b) asserts error in denying the motion to suppress due to a claimed failure to substantially comply with an ODH regulation concerning labeling and sealing of blood samples for testing and evidence of tampering.
 {¶ 14} We address the issue of refrigeration first. ODH regulation 3701-53-05 concerns the collection and handling of blood and urine specimens for alcohol and drug testing. Ohio Adm. Code 3701-53-05(F) provides that "[w]hile not in transit or under examination, all blood and urinespecimens [sic] shall be refrigerated."
 {¶ 15} According to testimony and documentary evidence at the hearing on the motion to suppress, a nurse drew two vials of appellant's blood for testing on February 15, 2005, at Bay Park Hospital, using a kit provided by police. Once the blood was placed in the vials, the vials were assigned an identification number, which was placed on the vials and on an accompanying work order. The work order ID number was 1351640.
 {¶ 16} After the nurse obtained the sample, Oregon Police Officer Michael Blazevich placed a seal over the top of the vials. He wrote on the seal the date of collection and the donor's initials. This information was also placed on the work order.
 {¶ 17} The vials were transported by Officer Blazevich to the Oregon Police Department, where they were refrigerated in the property room. Officer Tim Sheehan, the department's court and property officer, entered data with respect to the sample on the *Page 5 
police department computer for tracking purposes. Sheehan transported the samples to Great Lakes Biomedical in Perrysburg, Ohio on February 16, 2005.
 {¶ 18} No witness testified at the suppression hearing concerning the blood samples during the period from when they were delivered to Great Lakes Biomedical until the samples were delivered to the Ohio State Highway Patrol crime lab on August 8, 2005.
 {¶ 19} Criminalist Edward Yingling of the Ohio Highway Patrol Crime Lab testified that the blood samples were refrigerated at all times while in the custody of the Ohio Highway Patrol except while he was examining the blood on August 9, 2005.
 {¶ 20} At the suppression hearing, Yingling identified an exhibit consisting of a blood vial with an attached work order. Both bore ID number 1351640, the number assigned to appellant's blood samples at the time of collection. There was an additional green sticker on the vial. Yingling testified that the vial had a green label with initials on it and that he had not placed a green label on the blood vials. Yingling did not know the source of the green label. Officer Blazevich did not place a green label on the vial and did not know its source.
 {¶ 21} There was documentary evidence at the suppression hearing concerning the blood samples for the period from February 16, 2005 (when they were delivered to Great Lakes Biomedical) until August 8, 2005 (when they were delivered to the Ohio Highway Patrol). Exhibit 3 to the hearing was a document entitled "Fax Laboratory Report Quest Diagnostics." The document records a log-in-date of 02172005 and a testing date of *Page 6 
02182005. It indicates that the report was for Kyle Prueter at Great Lakes Biomed, 1021 Sandusky St., Perrysburg, Ohio and that "specimen received and processed in the Schaumburg DHHS Certified Laboratory." The lab is identified on the document as Quest Diagnostics-Schaumburg, 506 E. State Pkwy, Schaumburg, Illinois 60173.
 {¶ 22} The exhibit refers to Lance Kincaid by name. The requisition number on the document is the same number as the blood vial and work order identification number — 1351640. Exhibit 3 makes no reference as to whether the sample was refrigerated. No one from Great Lakes Biomed or Quest Diagnostics testified at the hearing on the motion to suppress. The state did not attempt to lay a foundation for admissibility of the Quest test results.[1] Its arguments in the trial court and on appeal have been limited to the admissibility of blood alcohol level testing performed by criminalist Yingling of the Ohio State Highway Patrol crime lab.
 {¶ 23} Appellant asserts that evidence is lacking to establish that the blood sample was refrigerated during a six month period from February 18 until August 8, 2005, and that, therefore, the state has failed to show substantial compliance with Health Department Regulations concerning the testing.
 {¶ 24} In response, the state has contended that proof of refrigeration of the blood samples was established indirectly through the testimony of state criminalist Edward Yingling of the Ohio State Highway Patrol lab. Yingling's testimony provided an expert *Page 7 
opinion that the blood alcohol level tests were reliable and that they would have not been reliable if the sample had not been "properly stored":
 {¶ 25} "Q. Okay. Are you familiar with, through your course, your education and training, as to what would happen with a sample if it was inappropriately stored or not properly stored?
 {¶ 26} "A. In my experience, if there's something wrong with the sample, it's not testable.
 {¶ 27} "Q. All right.
 {¶ 28} "A. We wouldn't be able to remove part of the sample for some reason or accurate — your results wouldn't be within five percent of one another.
 {¶ 29} "* * *
 {¶ 30} "Q. All right. Was this particular sample that you received testable?
 {¶ 31} "A. Yes."
 {¶ 32} The criminal charges against Kincaid are aggravated vehicular homicide under R.C. 2903.06(A)(1)(a) and (B) and aggravated vehicular assault under R.C. 2903.08(A)(1)(a) and (B). Both offenses require proof that death or serious physical injury proximately resulted from a violation of R.C. 4511.19(A). In State v. Mayl, 106 Ohio St.3d 207,2005-Ohio-4629, the Ohio Supreme Court identified the legal standard for admissibility of blood alcohol tests in such prosecutions:
 {¶ 33} "When results of blood-alcohol tests are challenged in an aggravated-vehicular-homicide prosecution that depends upon proof of an R.C. 4511.19(A) violation, *Page 8 
the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible."State v. Mayl, paragraph one of syllabus.
 {¶ 34} Where a defendant files a motion to suppress test results on the grounds of noncompliance with ODH regulations, the state has the evidentiary burden of laying a foundation showing the admissibility of the test results. State v. Mayl, ¶ 42; State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, 124.
 {¶ 35} When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to the trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 36} The Ohio Supreme Court has considered, repeatedly, what constitutes "substantial compliance" with ODH regulations governing the collection, handling, and testing of alcohol concentration levels. The court issued its opinion in State v. Plummer (1986), 22 Ohio St.3d 292
in 1986. The case involved a failure to refrigerate a urine specimen for one hour and 25 minutes between its collection and mailing to a lab for testing plus failure to refrigerate an additional three to four hours after it arrived at the lab. Plummer, 22 Ohio St.3d at 294-295. The Ohio Supreme Court held that the state *Page 9 
substantially complied with the administrative regulation concerning refrigeration of test specimens.
 {¶ 37} In the decision, the court noted that the likely effect of the failure to refrigerate would have benefited the defendant rather than harming him, as failure to refrigerate would result in a lower alcohol level test result. Id., fn. 2. The court also referred to a lack of prejudice to the defendant in the failure to follow refrigeration requirements and lack of evidence demonstrating that the failure to refrigerate for the period in that case affected the validity of test results. Id., 22 Ohio St.3d at 295.
 {¶ 38} In 2003, the Ohio Supreme Court revisited the issue inState v. Burnside. In the decision, the court reviewed how courts had applied the substantial compliance standard since the decision inState v. Plummer. It found that two separate approaches had been followed by appellate courts in determining whether substantial compliance of the ODH regulations had been shown: "One approach is to consider whether the noncompliance rendered the test results unreliable * * * Under this approach, a court will conclude that the state has substantially complied with the Department of Health regulations if the alleged deviation did not affect the reliability of the test results."State v. Burnside, ¶ 28 (citations omitted).
 {¶ 39} Under a second approach, the Ohio Supreme Court found that "a court will conclude that the state has substantially complied with the Department of Health regulations so long as the alleged deviation did not cause an erroneously higher test result." Id. (Citations omitted.) *Page 10 
 {¶ 40} The Ohio Supreme Court rejected both of these approaches in theBurnside opinion as "both require a judicial determination of what effect, if any, noncompliance had on the alcohol-test results. This determination, however, often requires judges to speculate why the Director of Health adopted a given regulation." Burnside, ¶ 29.
 {¶ 41} The Ohio Supreme Court specifically considered and rejected any role for courts to excuse noncompliance with ODH regulatory requirements for testing based upon a conclusion, by a judge, that the test results were reliable: "[C]ourts have concluded that the state need not show strict compliance with the regulations prescribed by the Director of Health if a judge deems the test results reliable. The problem, of course, is that such an approach is inconsistent with R.C. 4511.19, which provides that compliance with the regulations, rather than a judicial determination as to reliability, it the criterion for admissibility. See Cincinnati v. Sand (1975), 43 Ohio St.2d 79, 72 O.O.2d 44, 330 N.E.2d 908." Burnside, ¶ 32 (emphasis in the original). Such a judicial role, according to Burnside, "infringes upon the authority of the Director of Health when it holds that the state need not do that which the director has required." Burnside, ¶ 33.
 {¶ 42} To uphold the authority of the Director of Health, the Ohio Supreme Court narrowed the substantial compliance standard in Burnside:
 {¶ 43} "To avoid usurping a function that the General Assembly has assigned to the Director of Health, however, we must limit the substantial-compliance standard set forth in Plummer to excusing only errors that are clearly de minimis. Consistent with this limitation, we have characterized those errors that are excusable under the substantial- *Page 11 
compliance standard as `minor procedural deviations.' State v.Homan (2000), 89 Ohio St.3d 421, 426, 732 N.E.2d 952."Burnside, ¶ 34.
 {¶ 44} In Burnside, the Supreme Court of Ohio rejected the state's argument that blood alcohol test results should be admissible despite the state's failure to proffer evidence that it complied with the requirement of use of a solid anticoagulant in a blood alcohol level test. Burnside, ¶ 36. The state had argued use of a solid anticoagulant was not necessary to assure reliability of test results. Id., ¶ 37. The Supreme Court refused to "speculate" whether failure to use a solid anticoagulant affected the reliability of test results, declaring that it had "neither the requisite expertise or the statutory authority" to make such a determination. Id.
 {¶ 45} Subsequently, in State v. Mayl, the Ohio Supreme Court considered a number of different claimed violations of ODH regulations in the collection, handling, and testing of blood for alcohol level. One concerned refrigeration. The court held in Mayl that there was substantial compliance with the refrigeration requirement where there was a failure to refrigerate for a period of one hour and 45 minutes.State v. Mayl, ¶ 45. The court determined that there had been substantial compliance with the refrigeration requirement in Mayl. The court noted in the case that in Plummer it had found substantial compliance where a sample was not refrigerated for an even longer period. Id., ¶ 50, fn. 2 ("as much as five hours").
 {¶ 46} In this case the state failed to proffer evidence as to whether the blood sample was refrigerated during a period of nearly six months. Its claim that substantial *Page 12 
compliance with regulatory requirements was shown circumstantially because the specimen was "testable" is foreclosed by the Ohio Supreme Court's decision in Burnside. The court was unequivocal inBurnside that substantial compliance with ODH regulations is not established by a court determination of reliability of test results.
 {¶ 47} Under Burnside, the substantial compliance standard allows only for errors that are "clearly de minimis" that can be characterized as "minor procedural deviations." Id., ¶ 34. We cannot find that a lack of evidence of refrigeration of a blood sample for nearly a six month period constitutes a de minimis, minor procedural deviation from ODH regulatory requirements.
 {¶ 48} We find support of our conclusion in a recent decision of the Fifth District Court of Appeals in State v. DeJohn, 5th Dist. No. 06-CA-16, 2007-Ohio-163. In the decision, the Fifth District Court of Appeals reversed a conviction for driving under the influence of alcohol, where there had been a failure to refrigerate a urine sample for a 17 hour period. The Ohio State Highway Patrol trooper took the urine sample at 10:18 p.m. and the sample remained in his possession, unrefrigerated, from the time it was collected until it was mailed on the next day at 3:30 p.m. Id., ¶ 6. The Fifth District Court of Appeals held that failure to refrigerate a urine specimen for 17 hours was not a minor procedural deviation under Burnside and ruled that the test results were inadmissible. Id., ¶ 18-19.
 {¶ 49} We conclude that appellant's first assignment of error is well-taken. *Page 13 
 {¶ 50} In the second assignment of error, appellant claims that there was a violation of ODH regulation concerning the labeling and sealing of blood samples for testing. As part of the assigned error he also claims that his blood sample was tampered with. Ohio Adm. Code 3701-53-05(E) provides:
 {¶ 51} "(E) Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains at least the following information:
 {¶ 52} "(1) Name of suspect;
 {¶ 53} "(2) Date and time of collection;
 {¶ 54} "(3) Name or initials of person collecting the sample; and
 {¶ 55} "(4) Name or initials of person sealing the sample."
 {¶ 56} In his motion to suppress, appellant limited his argument concerning a green label on the remaining blood vial to a claim that the state failed to meet Ohio Adm. Code 3701-53-05(E). In the trial court, appellant argued that the green "seal would seem to be indicative of some unknown individual handling the sample, but provides no evidence that such handling was in compliance with Department of Health Regulation." On appeal, the argument has become that the "green seal on the Appellant's blood sample constitutes tampering."
 {¶ 57} The trial court concluded that the evidence showed that there was a green seal on the blood vial and under the green seal there was another label but that the "blood vials had attached to them a separate work order that contained the name, address and *Page 14 
social security number of the donor, date of collection and initials of the officer." The trial court concluded that the labeling was sufficient to meet the requirements of Ohio Adm. Code 3701-53-05(E). We agree that the blood vials were properly sealed so tampering could be detected. Appellant has not contested the chain of custody either in the trial court or on appeal.
 {¶ 58} On appeal, appellant now asserts that the green label on the blood vial show "tampering" with the blood samples, rather than merely handling by others and objects to consideration of test results on the basis of tampering. The state objects. The state contends appellant failed to assert tampering in the court below and has waived any tampering claim. It argues further that there is no evidence of tampering to support the claim. We agree on both grounds.
 {¶ 59} Appellant may not challenge on appeal the admissibility of blood alcohol test results on grounds not raised in the court below.State v. Mayl, ¶ 42; State v. Mock (1993), 85 Ohio App.3d 332, 334. Appellant did not claim tampering with the blood test samples in the trial court. He is therefore precluded from asserting the claim on appeal.
 {¶ 60} The record includes evidence of handling of the blood vials by another testing laboratory, Quest Diagnostics, and evidence that Quest had conducted testing of the blood samples. The Ohio Highway Patrol criminologist testified that the green label was also initialed. No one testified from Quest at the suppression hearing as to whether the green label was theirs. Under such circumstances, the existence of the green label on *Page 15 
the remaining blood vial does not support any claim of tampering with the samples. We therefore find that appellant's second assignment of error is not well-taken.
 {¶ 61} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed in part and affirmed in part. We find that appellant was prevented from having a fair trial and that the motion to suppress the evidence of the blood alcohol level test results should have been granted. Pursuant to App.R. 24, appellee is required to pay the courts costs of this appeal. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County. We remand this case to the Lucas County Court of Common Pleas for further proceedings consistent with this decision.
JUDGMENT REVERSED IN PART
AND AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., Concur.
[1] At oral argument, the state clarified its position on the testing. It had not offered the Quest test results as evidence because the Quest facility was not a licensed laboratory to perform the testing under ODH regulations. *Page 1