[Cite as *State v. Mullins*, 2013-Ohio-2688.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA3350 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| LAURA K. MULLINS, | : | |
| | : | **RELEASED 6/25/13** |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Timothy Young, Ohio Public Defender, and Jessica S. McDonald, Assistant Ohio Public Defender, Chillicothe, Ohio, for appellant.

Sherri K. Rutherford, City of Chillicothe Law Director, and Michele Rout, City of Chillicothe Assistant Law Director, Chillicothe, Ohio, for appellee.
_____
Harsha, J.

{¶1} Following a no contest plea, Laura Mullins appeals her conviction for operating a vehicle with a prohibited concentration of alcohol in her urine. Mullins contends the trial court erred when it denied her motion to suppress the results of her urine test because the State failed to prove it substantially complied with a regulation that requires urine samples be refrigerated while not in transit or under examination. The parties stipulated that after a trooper took the urine sample, he gave it to another trooper who did not refrigerate it and did not place it in the mail for testing until nearly 12 hours later. Because this is not a de minimis or minor procedural deviation, we agree the State failed to prove substantial compliance. Therefore, the trial court erred when it denied the motion to suppress. We reverse and remand for further proceedings.

I. Facts

**{¶2}**    Mullins was charged with violating R.C. 4511.19(A)(1)(a), R.C.

4511.19(A)(1)(e), and R.C. 4511.202.  She filed a motion to suppress the results of her

urine test, arguing the State failed to keep her urine specimen refrigerated when it was

not in transit or under examination.  The parties made the following stipulations for

purposes of the motion:

1.  Defendant became the subject of a vehicle crash investigation on March 24, 2012.

2.  Upon being placed under arrest, by Trooper Brown of the Ohio State Highway Patrol, the Defendant agreed to submit to a urine analysis.

3.  The Defendant's urine sample was collected and witnessed by Trooper Hutton of the Ohio State Highway Patrol.

4.  The Defendant's sample was collected at 18:44 (6:44 p.m.) on March 24, 2012 and according to the property control form, the sample was given to Trooper Brown by Trooper Hutton at that same time.

5.  The Defendant's urine sample was kept in Trooper Brown's locked patrol cruiser for the remainder of his shift.

6.  Trooper Brown got off his shift at 6:00 a.m., on March 25, 2012.

7.  According to the property control form completed and submitted by Trooper Brown, the Defendant's urine sample was not placed in the mail (transit) until 6:30 a.m. on March 25, 2012.

8.  At no time between the collection at 6:44 p.m. on March 24, 2012 and the placing in the mail at 6:30 a.m. on March 25, 2012, was the Defendant's urine sample refrigerated.

**{¶3}**    At a hearing on the motion, the court stated:

Alright, well I have reviewed the law in this area and it does appear to me, at least, that this is a close case, frankly.  There are some cases that say three, four, maybe five hours is ok.  There's another case out there that says seventeen hours is not ok in terms of getting the urine sample out of the patrol's hands and into the mail, I guess.  The thing that just seems to distinguish those cases is that if the trooper does it while he's on his shift or as soon as he's leaving his particular shift that he's on when he obtains the sample, that seems to be ok.  And if he doesn't do it at the end of that

shift but comes back and does it another shift that it's not ok. And the purposes [sic] of trying to make a bright line, this Court's gonna rule that if the trooper takes the sample and places it in the mail during his shift or immediately at the conclusion of his shift, then that's gonna be ok. If he waits beyond the end of his shift to another shift or whatever, then it wouldn't be ok. But even though it was twelve hours later in this case, the trooper apparently did deposit the sample in the mail as he was leaving his shift. The Court's gonna rule that that's ok and the motion to suppress is gonna be overruled for that reason. * * *

**{¶4}** Later, the court issued an entry stating the motion to suppress was overruled "for reasons stated on the record." Subsequently, Mullins pleaded no contest to a violation of R.C. 4511.19(A)(1)(e), and the court found her guilty and sentenced her. The court dismissed the other charges. This appeal followed.

## II. Assignment of Error

**{¶5}** Mullins assigns the following error for our review:

I.   THE COURT BELOW ERRED WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BECAUSE THE STATE FAILED TO SUBSTANTIALLY COMPLY WITH OAC 3701-53-05(F), WHEN IT FAILED TO REFRIGERATE THE URINE SPECIMEN COLLECTED FROM THE DEFENDANT, FOR 12 HOURS AFTER ITS COLLECTION.

## III. Motion to Suppress

**{¶6}** In the sole assignment of error, Mullins contends the court erred when it denied her motion to suppress. Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court acts as trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Here, the parties stipulated to the facts for purposes of the motion to suppress. Thus, accepting those

facts as true, we must "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶7} R.C. 4511.19(D)(1)(b) provides for the admission of evidence on the concentration of alcohol in a defendant's urine in a prosecution under R.C. 4511.19(A). The State must have the urine analyzed in accordance with methods approved by the director of health. R.C. 4511.19(D)(1)(b). One of these methods appears in Ohio Adm.Code 3701-53-05(F), which provides: "While not in transit or under examination, all blood and urine specimens shall be refrigerated."

{¶8} A burden-shifting procedure governs the admissibility of alcohol-test results. *Burnside* at ¶ 24. "The defendant must first challenge the validity of the alcohol test by way of a pretrial motion to suppress * * *." *Id.* Then, "the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health." *Id.* If the state satisfies this burden, thereby creating a presumption of admissibility, the burden "then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance." *Id.* "Hence, evidence of prejudice is relevant only after the state demonstrates substantial compliance with the applicable regulation." *Id.*

{¶9} Here, Mullins challenged the validity of the urine test results in a motion to suppress. Therefore, the State had the burden to show the test was administered in substantial compliance with the methods approved by the director of health. Mullins argues the State failed to show substantial compliance with Ohio Adm.Code 3701-53-05(F) because her sample was unrefrigerated for almost 12 hours when it was not in transit or under examination.

{¶10} "To avoid usurping a function that the General Assembly has assigned to the Director of Health, * * * we must limit the substantial-compliance standard * * * to excusing only errors that are clearly de minimis." *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 34. Thus errors that are excusable under the substantial-compliance standard must be "minor procedural deviations." *Id.*

{¶11} Mullins argues that in *State v. Docterman*, 4th Dist. No. 85X3, 1986 WL 3405 (Mar. 19, 1986), we held that "because the arresting officer failed to refrigerate a urine sample, while not in transit, pursuant to the regulations, until after his shift, the test results were inadmissible." (Appellant's Br. 3). Even if we agreed with this statement, as the State points out, we later vacated that opinion and judgment entry. *State v. Docterman*, 4th Dist. No. 85X3, 1986 WL 7880 (July 7, 1986). Thus, Mullins' reliance on that opinion is misplaced.

{¶12} In *State v. Plummer*, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986), the Supreme Court of Ohio considered the former version of Ohio Adm.Code 3701-53-05(F), which stated that "[w]hile not in transit to a laboratory or under examination all urine * * * specimens shall be refrigerated at a temperature of forty-two degrees Fahrenheit or below." The Court found that the sample at issue was not refrigerated for one hour and 25 minutes between the time of collection and mailing, but that "[d]uring this interval, packaging, labeling and delivery to mail deposit were required." *Plummer* at 294. The Court also found the sample was "at worst" not refrigerated for three to four hours between the time the laboratory received and tested it. *Id.* But the Court agreed "with the court of appeals' reasoning that the storage temperature requirement of Ohio Adm.Code 3701-53-05 contemplates cases involving longer periods of specimen

retention, rather than a relatively slight delay between receipt and testing as in this case." *Id.* at 295. The Court found substantial compliance with former Ohio Adm.Code 3701-53-05(F). We note the current version of the regulation does not contain the temperature requirement the Court partly relied on to reach its conclusion.

**{¶13}** In contrast, in *State v. DeJohn*, 5th Dist. No. 06-CA-16, 2007-Ohio-163, which Mullins cites, a trooper took a urine sample at 10:18 p.m. He went off duty shortly after that and did not mail the sample until 3:30 p.m. the next day. The Fifth District found that this over 17 hour period when the sample was not in transit or under examination was "not a relatively slight delay or minor procedural deviation." *DeJohn* at ¶ 18. Therefore, the court found the State failed to prove substantial compliance with Ohio Adm.Code 3701-53-05(F).

**{¶14}** The State argues that *DeJohn* is distinguishable from this case because the trooper in *DeJohn* waited until his next shift to place the sample into the mail. The State argues that other courts "have accepted the determination that the mailing of the sample at the end of the officer's shift is acceptable." (Appellee's Br. 1). The trial court was persuaded by this argument and created a bright line rule that "if the trooper takes the sample and places it in the mail during his shift or immediately at the conclusion of his shift, then that's gonna be ok."

**{¶15}** The trooper who collected the sample in this case was not the same trooper who mailed the sample. Moreover, we decline to create a bright line rule that the state substantially complies with Ohio Adm.Code 3701-53-05(F) if a urine sample is unrefrigerated between the time it is collected and placed into transit so long as the trooper who collects (or takes possession of) the sample mails it to a laboratory during

or immediately after his shift, regardless of how long that is. The mere fact that a trooper collects or takes possession of a sample and mails it during a single shift does not make a violation of Ohio Adm.Code 3701-53-05(F) "clearly de minimis" or a "minor procedural deviation." Shift lengths can vary, and so can the periods of retention within a shift.

{¶16} Although it may not be convenient or possible for a trooper to place a blood or urine sample in transit in a timely fashion during his shift, the current version of Ohio Adm.Code 3701-53-05(F) is less burdensome than its predecessor in terms of storage requirements. The State no longer needs to worry about law enforcement storing samples at a specific temperature. Because the code simply requires refrigeration of samples while not in transit or under examination, troopers could arguably comply with Ohio Adm.Code 3701-53-05(F) by placing samples in a small cooler with frozen gel packs in the trunk of their vehicles.

{¶17} We find that the approximate 12 hour period in which Mullins' urine sample was unrefrigerated while not in transit or under examination, like the 17 hour period in *DeJohn*, is not "clearly de minimis" or simply a "minor procedural deviation" from Ohio Adm.Code 3701-53-05(F). This period of time is more than double the amount of time the *Plummer* Court characterized as a "relatively slight delay." It is also double or more than double time periods approved by other Ohio courts. *See State v. Price,* 11th Dist. No. 2007-G-2785, 2008-Ohio-1134, ¶ 26 (finding retention of a blood sample in an unrefrigerated state for six hours before mailing not a violation); *State v. Schell,* 5th Dist. CA-7884, 1990 WL 83992, *2 (June 18, 1990) (finding substantial compliance when blood sample went unrefrigerated for five hours).

{¶18}  Accordingly, we sustain the sole assignment of error, reverse the trial court's judgment, and remand for further proceedings, including the issuance of an entry granting Mullins' motion to suppress.

JUDGMENT REVERSED AND
CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.: Concurs in Judgment and Opinion.
McFarland, P.J.: Dissents.

For the Court

BY: _____
William H. Harsha, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**