O’Connor, C.J.,
concurring.
{¶ 28} The majority opinion restates our prior holdings on substantial compliance with regulations regarding the proper handling of bodily substances and the burden-shifting test used to govern the admissibility of blood-alcohol test results. There is, for all intents and purposes, a court-made rule that a failure to refrigerate a specimen for four to five hours is a de minimis error. Although the majority correctly states case law, I believe that this is an opportunity to focus on the shortcomings of Ohio Adm.Code 3701-53-05(F), the director of health’s regulation that gives rise to this court-made rule. I concur separately to caution against a blanket-rule approach and, as importantly, to express my concern over the limited usefulness of the current regulation in determining whether specific errors in handling specimens are de minimis.
{¶ 29} Ohio Adm.Code 3701-53-05(F) simply requires that “[w]hile not in transit or under examination, all blood and urine specimens shall be refrigerated.” A substantial-compliance standard is used to determine whether the state complied "with this regulation, but only de minimis errors or “ ‘minor procedural deviations’ ” are permitted. State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 34, quoting State v. Homan, 89 Ohio St.3d 421, 426, 732 N.E.2d 952 (2000). The purpose of allowing only minor deviations from the regulations is “[t]o avoid usurping a function that the General Assembly has assigned to the Director of Health” in developing procedures “to ensure the reliability of alcohol-test results.” Id. at ¶ 32, 34.
{¶ 30} The majority’s conclusion that a specimen being unrefrigerated for four to five hours is a de minimis error is based on our decisions in State v. Plummer, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986), and State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216.[1] Plummer involved the testing of a urine sample that was collected in the month of August. Id. at 292. Prior to being *464 mailed to the lab, the specimen was unrefrigerated for approximately one and a half hours; the court noted that during that time, the specimen was packaged, labeled, and delivered to the mail drop. Id. at 294. After transit, the specimen was unrefrigerated in the lab for at most three to four hours. Id. at 294-295.
{¶ 31} Here, the blood specimen was collected in March and was kept in the officer’s car at an unknown temperature for approximately four hours before it was mailed to the lab. I concur in the majority opinion because it is not clear that the factual differences between the two cases matter given that the regulation does not provide guidance on what conditions are critical to ensuring reliability of the test results from a sample.
{¶ 32} Some appellate courts have concluded that the failure to refrigerate a sample for up to almost 19 hours constitutes a de minimis error and that the corresponding handling procedures are in substantial compliance with the regulation. See, e.g., State v. Watson, 9th Dist. Summit No. C.A. 27257, 2015-Ohio-283, 2015 WL 341003, ¶ 22 (specimen was unrefrigerated for 63 minutes); State v. Schneider, 1st Dist. Hamilton No. C-120786, 2013-Ohio-4789, 2013 WL 5885737, ¶ 7, 18, 19 (specimen was unrefrigerated for 18 hours and 45 minutes, but according to the court, the specimen was “in transit” within the meaning of the regulation when the trooper transported the sample to his patrol post and to the mailbox); State v. Price, 11th Dist. Geauga No. 2007-G-2785, 2008-Ohio-1134, 2008 WL 696116, ¶ 26 (specimen was unrefrigerated for six hours). But other appellate districts have held that 12 or 17 hours without refrigeration was not a de minimis error. State v. Mullins, 4th Dist. Ross No. 12CA3350, 2013-Ohio-2688, 2013 WL 3326131, ¶ 17 (specimen was unrefrigerated for 12 hours); State v. DeJohn, 5th Dist. Perry No. 06-CA-16, 2007-Ohio-163, 2007 WL 117999, ¶ 18 (specimen was unrefrigerated for 17 hours).
{¶ 33} The variance among these decisions illustrates the difficulty for courts in applying a vague substantial-compliance standard. And although a person might not question whether failing to refrigerate a specimen for 63 minutes constitutes substantial compliance with a regulation that requires refrigeration, a person certainly might question why failing to refrigerate a specimen for 18 hours constitutes substantial compliance. The majority opinion does not resolve that question. Nor does the regulation in its current form.
{¶ 34} Given the vagaries that remain in applying the current regulation, even after Burnside, the bright-line approach used by the majority is tempting. But the majority’s blanket holding that failing to refrigerate a specimen for a four-to-five-hour period is a de minimis error essentially rewrites the regulation to permit such a variation (notwithstanding that any number of facts could play out in a four-to-five-hour period). This approach risks “subverting] the rule-making *465 authority and the statutory mandate of the Director of Health,” which we warned against in Burnside. Id., 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 32. “Indeed, the General Assembly instructed the Director of Health — and not the judiciary — to ensure the reliability of alcohol-test results by promulgating regulations precisely because the former possesses the scientific expertise that the latter does not.” (Emphasis sic.) Id.
{¶ 35} If the state’s burden to show substantial compliance under the Burnside test is to have any relevance, courts must have the information needed to assess what constitutes a de minimis error. Guidance from the director of health regarding the purpose of the procedures in the regulations and the effect that noncompliance has on the reliability of the test will allow judges to avoid the type of speculation that was criticized in Burnside — speculation about why the director of health adopted a given ^regulation. Id. at ¶ 29. But it is simply unclear what conditions the regulation is intended to ensure by requiring refrigeration.
{¶ 36} A prior version of the regulation required refrigeration at no more than 42 degrees Fahrenheit. See Plummer, 22 Ohio St.3d at 294, 490 N.E.2d 902. But the regulation no longer contains a temperature requirement and does not explain the purpose of keeping the specimen refrigerated. And there is no requirement that the samples be refrigerated when in transit — even if that transit takes days or weeks. Still, if a sample is unrefrigerated when not in transit, is the ambient temperature relevant? If it is, then it seems that the substantial-compliance determination should take into account whether the unrefrigerated sample was stored in a hot car or in a climate-controlled building.
{¶ 37} In Plummer, we noted that there was research concluding that refrigeration reduces vapor loss of alcohol in specimens, meaning that failure to refrigerate a specimen would benefit a defendant. Id. at 295, fn. 2. If that research, which was done before the modern evidentiary standards imposed by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny, is accepted by the director of health, and an unrefrigerated sample does not prejudice a defendant, is a Burnside analysis even necessary in these cases?
{¶ 38} The key to obtaining clarity regarding substantial compliance resides with the director of health and his scientific expertise rather than with the courts. Until the director of health indicates the purpose of the procedures set forth in the regulations, Ohio’s courts will continue to produce varying decisions by engaging in analyses that “subvert the rule-making authority and the statutory mandate of the Director of Health.” Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 32.
*466 {¶ 39} I therefore concur separately to emphasize the need for guidance in the regulations.
LanzingeR, J., concurs in the foregoing opinion.

. Mayl did not analyze the pretransit-refrigeration issue but instead simply restated the Plummer holding in a footnote. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 60, fn. 2.