THE STATE OF OHIO, APPELLEE, *v.*
CASADAY, APPELLANT

(Nos. 86AP-922, 86AP-923 and 86AP-924—Decided June 2, 1987.)

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, and *David E. Tingley,* for appellee.

*Hobday & Piper* and *John D. Hobday,* for appellant.

YOUNG, J. Appellant was stopped by Trooper Bocsy and charged with DWI, in violation of R.C. 4511.19(A)(1) and (A)(4). Appellant has a medical history of heart problems and diabetes and testified that he had sharp chest pains before Trooper Bocsy stopped and arrested him. He also testified that he had had two beers earlier in the evening. Trooper Bocsy testified that appellant did poorly on the field sobriety tests, had difficulty carrying on a conversation, and was unable to repeat the "ABC's."

The emergency squad arrived at the scene and began emergency procedures, which included giving appellant glucose intravenously. Appellant was then transported to Doctor's West Hospital. Trooper Bocsy followed the squad to the hospital and, with the doctor's permission, approached the appellant. Appellant agreed to submit to a urine test when asked by Trooper Bocsy to do so. The nurse then gave Trooper Bocsy a plastic container; Trooper Bocsy handed it to appellant; appellant urinated into the plastic container; appellant handed it to the nurse; and the nurse handed it to Trooper Bocsy. Appellant had his back to Trooper Bocsy while he urinated in the plastic container. Trooper Bocsy then poured the urine from the plastic container into a jar; he labeled the jar once he returned to the post. Trooper Bocsy filled out the proper documents and sent the urine sample to be analyzed. Using a gas chromatograph, Trooper Batchell reported that the alcohol content in appellant's urine sample was .16 gram per one hundred milliliters while the statutory limit is .14 gram. See R.C. 4511.19 (A)(4). Appellant objected to the admission of the urine test into evidence, but his objection was overruled. Appellant was subsequently convicted.

Appellant asserts the following two assignments of error:

"1. The court below erred in allowing the introduction of the results of the urine test for alcohol where the prosecution failed to show that the rules of the Ohio Department of Health was [*sic*] substantially followed by the officer making the arrest and·obtaining the specimen and [*sic*] examiner, where the defendant demonstrated prejudice to him from the admission of the test.

"2. The court erred in admitting the chemical test and such error was instrumental in misleading the jury to believe that the defendant was under the influence of alcohol in violation of section 4511.19(A)(1) of the Ohio Revised Code."

In his first assignment of error, appellant alleges that the police officer making the arrest failed to substantially comply with the rules for collecting and handling urine specimens as set forth by the Ohio Department ·of Health. The test in this case produced results of .16 gram, while the statutory limit is .14 gram by weight of alcohol per one hundred milliliters of urine. In pertinent part, Ohio Adm. Code 3701-53-05, as in effect at the time of the offense, stated:

"(A) All samples shall be collected within two hours of the time of the alleged violation.

"(* * *

"(D) Urine shall be deposited into a clean glass or plastic container and shall be capped or stoppered. No preservative may be added. The collection of a urine specimen must be witnessed to assure that the sample can be authenticated.

"(E) Blood and urine containers shall be sealed with a gummed tape or sticker which contains at least the following information:

"(1) Name of suspect;

"(2) Arrest or slate number;

"(3) Date and time of collection;

"(4) Name or initials of person collecting and/or sealing sample.

"(F) While not in transit to a laboratory or under examination all urine and blood specimens shall be refrigerated at a temperature of forty-two degrees Fahrenheit or below."

In the instant case, the evidence shows that the appellant was arrested at 2:30 a.m., February 6, 1986. The record further reflects that the urine sample was collected from appellant at 3:50 a.m. the same day. Therefore, the officer complied with Ohio Adm. Code 3701-53-05(A) by collecting the urine sample within two hours of the alleged violation.

The record reflects the following as to the actual collection of appellant's urine specimen: appellant was lying on an emergency bed, which was surrounded by a curtain; after asking the doctor's permission to talk with appellant, the officer stood next to appellant and read to him the implied consent form and his constitutional rights; the officer asked him if there was any physical or medical condition that would not allow him to give a sample of his blood, breath, or urine and appellant replied "no"; appellant replied "yes" that he would submit to the urine test. A nurse gave appellant a plastic container which had been wrapped and sealed. Appellant stood and urinated into the container. The officer was behind the curtain with appellant but appellant had his back to the officer while he urinated. The nurse took the container from the appellant and handed it to the officer. The officer stepped from within the curtain to a counter and poured the urine into a glass container provided by the Highway Patrol for such purposes. He then placed a cap on the bottle and tightened it. He kept the container in his possession until he returned to the post, labeled it according to regulations and prepared docu-

ments to have it sent to the lab. The arresting officer personally placed the specimen in the United States mail.

The lab technician testified that when he received the specimen in the morning of February 10, 1985, he unsealed it and checked the labeling. He found the labeling to be proper and done according to the Department of Health regulations. Thus, appellee has met its burden to establish that it is reasonably certain that no substitution, alteration or tampering took place. *State* v. *Moore* (1973), 47 Ohio App. 2d 181, 1 O.O. 3d 267, 353 N.E. 2d 866. Moreover, the issue as to whether there exists a break in the chain of custody is a determination belonging to the trier of fact. *Columbus* v. *Marks* (1963), 118 Ohio App. 359, 25 O.O. 2d 228, 194 N.E. 2d 791; *State* v. *Fleming* (May 10, 1983), Franklin App. No. 82AP-813, unreported. Appellant's contention that the appellee failed to show a proper chain of custody is unfounded.

Appellant next contends that since appellant's urine specimen was not refrigerated while it was not in transit or under analysis, in contravention of Ohio Adm. Code 3701-53-05(F), the specimen could have begun a fermenting process which would have tainted the test results. This, in addition to appellant's glucose level, is indicative that the urine test results were inaccurate.

The record reflects that the specimen arrived at the lab on February 10, 1985, between 9:00 and 10:00 a.m. It is normal procedure for the lab technician to unseal the specimen and allow it to sit in order to reach room temperature before running the tests. This procedure insures optimum results. However, this process usually only takes a half hour, whereas in this case, the test was not performed on appellant's urine specimen until 12:38 p.m.

In *State* v. *Plummer* (1986), 22 Ohio St. 3d 292, 294-295, 22 OBR 461, 464, 490 N.E. 2d 902, 905, the court stated as follows:

"* * * [t]here is leeway for substantial, though not literal, compliance with such regulations. In the case *sub judice* a period of one hour and twenty-five minutes elapsed from obtaining appellant's urine sample until mailing. During this interval, packaging, labeling and delivery to mail deposit were required. Once received by the laboratory two days later, there was at worst a three- to four-hour interval when the specimen may not have been refrigerated in compliance with the administrative code. We agree with the court of appeals' reasoning that the storage temperature requirement of Ohio Adm. Code 3701-53-05 contemplates cases involving longer periods of specimen retention, rather than a relatively slight delay between receipt and testing * * *."

It is evident from the record that from the time appellant's urine specimen was collected until the time it arrived at the lab and underwent analysis, it was not refrigerated. However, in applying *Plummer,* it is clear that appellee substantially complied with Ohio Adm. Code 3701-53-05. As in *Plummer,* there was a time period between collection and mailing when the urine specimen was not refrigerated. Likewise, as in *Plummer,* there was also a two- to three-hour interval when the specimen was not refrigerated once it arrived at the lab and was prepared for testing.

Therefore, according to *Plummer,* the state substantially complied with the Department of Health regulations. However, appellant contends that he was prejudiced by the admission of the chemical test and proffered expert testimony to support his contention that his high glucose level combined

with the lack of refrigeration affected the accuracy of the test results.

The jury heard conflicting testimony regarding the effects of glucose in appellant's blood and whether this coupled with bacteria or fermentation would produce test results inaccurately high or low.

The lab technician testified that all Department of Health regulations were followed. When asked if bacteria, present in the sample, would invalidate the results, the lab technician answered that it was more likely that bacteria would lower the level of alcohol in the absence of a high sugar content in the urine. He also testified that there were no visible signs of fermentation in appellant's urine sample. However, he did admit that there was a point when fermentation could be taking place and not be readily detectable. He stated that this most likely could occur when the sample was relatively fresh from the individual.

Appellant's expert testified that the appellant's .450 glucose level, his consuming two beers, and his diabetic condition were facts which could have contributed to the inaccuracy of appellant's urine test results. It was his opinion that, given the circumstances, appellant could not have produced the test results that appellee claims.

Based on the foregoing conflicting testimony, it is apparent that the urine test results were insufficient for the purposes of determining appellant's guilt in regard to the *"per se"* violation of R.C. 4511.19(A)(4). There was sufficient evidence upon which the jury could infer that the urine test results were either positively skewed or negatively skewed. See *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897. Thus, there was insufficient evidence as a matter of law to support a *"per se"* conviction that appellant's test results exceeded the statutory limit as defined in R.C.

4511.19(A)(4). These test results were inconclusive as to the amount of alcohol in the appellant's urine in light of the experts' testimony and the fact that appellant tested .16, so close to the .14 statutory limit. The testimony from both experts indicating that the test results could be inaccurate gives rise to a reasonable inference that the amount of alcohol in appellant's urine was less than .14 percent at the time he was driving. The urine test results are the basis for sustaining appellant's first assignment of error. Therefore, appellant's first assignment of error is well-taken and sustained.

In the second assignment of error, appellant asserts that the trial court erred in admitting the results of the urine test in regard to R.C. 4511.19 (A)(1) and that the jury was misled. R.C. 4511.19(A)(1) states as follows:

"(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:

"(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse[.]"

In regard to R.C. 4511.19(A)(1), appellant's urine test results had probative value only in substantiating that appellant had, in fact, consumed alcohol. Since appellant himself admitted consuming two beers in the few hours before he was arrested, it is difficult to conclude that the jury was misled. Disregarding appellant's admission that he consumed two beers and the test results, the officer's testimony that appellant failed to drive within the marked lanes, that he sensed a strong odor of alcohol on appellant's breath, that appellant exhibited bloodshot eyes and slightly slurred speech, and that he staggered from the car and did poorly on the field sobriety tests, is sufficient evidence upon which to base appellant's conviction of R.C. 4511.19(A)(1). See *State* v.

*Stewart* (1964), 176 Ohio St. 156, 160, 27 O.O. 2d 42, 44-45, 198 N.E. 2d 439, 442. Because the record supports the jury's finding that appellant was under the influence of alcohol, the second assignment of error is not well-taken and is overruled.

Based on the foregoing, appellant's first assignment of error is sustained; the second assignment of error is overruled. The judgment of the Franklin County Municipal Court is affirmed in part, reversed in part, and the cause is remanded for further proceedings in accordance with this decision.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

WHITESIDE and BRYANT, JJ., concur.