**The STATE of Ohio, Appellee,**

**v.**

**COOK, Appellant.**

[Cite as *State v. Cook* (1992), 82 Ohio App.3d 619.]

Court of Appeals of Ohio,
Brown County.

No. CA92–05–012.

Decided Sept. 28, 1992.

R. *Alan Corbin*, Brown County Prosecuting Attorney, and *Roderick J. Hamilton*, Assistant Prosecuting Attorney, for appellee.

*Michael P. Kelly*, for appellant.

WALSH, Judge.

Defendant-appellant, John B. Cook, appeals his conviction in Brown County Court for driving while under the influence of drugs ("DUI") in violation of R.C. 4511.19(A)(1).

On Friday, January 3, 1992, at approximately 3:20 p.m., Ohio State Trooper Brian Rhoades stopped appellant for speeding on U.S. 68. As Rhoades approached appellant he noticed that appellant was shaking, his speech was

slurred, and his eyes were glassy. Appellant told Rhoades that he was experiencing an insulin reaction. Upon further contact with appellant, however, Rhoades detected the odor of marijuana on appellant's person. Subsequently, Rhoades arrested appellant for DUI and searched him. The search revealed a plastic bag containing 3.383 grams of marijuana in appellant's right jacket pocket.

Rhoades drove appellant to the Georgetown patrol post where he collected a sample of appellant's urine. Rhoades sealed the tube containing the urine specimen, labeled it, and completed a property control form. He then mailed the specimen to the State Highway Patrol Crime Lab in Columbus. The lab received the specimen three days later, on Monday, January 6, 1992. On January 10, 1992, the lab criminalist found that the specimen contained one hundred or more nanograms of delta–9–tetrahydrocannabinol carboxylic acid, the active ingredient in marijuana.

On appeal, appellant offers the following assignment of error:

"The trial court erred in finding defendant-appellant guilty of DUI because given the 3 day delay in refrigerating the urine specimen and the fact that the test results may have been affected by defendant's diabetic condition, the weight of the evidence was insufficient to prove the elements of the offense beyond a reasonable doubt."

Appellant's sole assignment of error is comprised of two arguments. First, appellant contends that the state did not comply with Ohio Adm.Code 3701–53–05, which governs the collection and handling of blood and urine specimens, because the urine specimen was unrefrigerated from January 3 to January 6.[1]

The Ohio Revised Code authorizes the use of urine specimens as evidence of DUI. R.C. 4511.19(D). That section also instructs that "[s]uch bodily substance shall be analyzed in accordance with methods approved by the director of health * * *." *Id.* The methods approved by the Director of Health for the collection and handling of blood and urine specimens are contained in Ohio Adm.Code 3701–53–05. Specifically, appellant alleges that the state violated Ohio Adm.Code 3701–53–05(F), which states: "While not in transit to a laboratory or under examination, all urine and blood specimens shall be refrigerated at a temperature of forty-two degrees Fahrenheit or below."

---

1. Appellant did not object to the admission of the urine test results either before trial, through a motion to suppress, or during trial. The general rule is that a failure to object precludes any further challenge on appeal. See Crim.R. 12(G) and *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239. Nevertheless, because appellant was not represented by counsel at trial, we treat the test results as properly objected to, preserving error for our review.

While we question the applicability of this section to the present case,[2] we find that the state did not violate Ohio Adm.Code 3701–53–05(F).

 In a DUI prosecution under R.C. 4511.19, a urine test must be "administered in substantial compliance with Ohio Adm.Code 3701–53–05." *State v. Plummer* (1986), 22 Ohio St.3d 292, 295, 22 OBR 461, 464, 490 N.E.2d 902, 905. If the state demonstrates "substantial compliance," the test results are admissible "absent a showing of prejudice to [the] defendant." *Id.*

In *Plummer*, "substantial compliance" included an unrefrigerated period of one hour and twenty-five minutes before the specimen was mailed to the lab and an unrefrigerated period of three to four hours after the specimen arrived at the lab. In the case *sub judice*, Rhoades testified that he mailed appellant's urine specimen fifteen to twenty minutes after it was collected. The state criminalist testified that the specimen was refrigerated immediately upon its arrival at the lab three days later. Thus, relying on *Plummer*, the state appears to be in "substantial compliance" with Ohio Adm.Code 3701–53–05(F).

Nevertheless, appellant argues that *State v. Pugh* (Aug. 5, 1985), Stark App. No. CA–6585, unreported, 1985 WL 6476, is controlling. The court in *Pugh* held that a urine specimen mailed on September 1, and received after Labor Day on September 5, was not "in transit" during that period for purposes of Ohio Adm.Code 3701–53–05(F). Because Ohio Adm.Code 3701–53–05(F) requires refrigeration unless the specimen is "in transit" or being examined, and because the specimen was unrefrigerated for four days, the court concluded that the state had violated the regulation.

The Court of Appeals for Stark County revisited *Pugh* in *State v. Cook* (Aug. 3, 1992), Stark App. No. CA–8708, unreported, 1992 WL 195440, however. In *Cook*, the court held that a urine specimen mailed on May 25, 1991, and received after Memorial Day on May 28, 1991, was "in transit" for purposes of Ohio Adm.Code 3701–53–05(F). The court relied on *Plummer's* "substantial compliance" test in its decision. Since the Court of Appeals for Stark County has now abandoned its holding in *Pugh*, we find that case to be unpersuasive.

---

**2.** Ohio Adm.Code Chapter 3701–53 is titled "Alcohol Testing, Approval, and Permit Program." Ohio Adm.Code Chapter 3701–53 covers only the screening of blood and urine for alcohol. It does not address drug testing. However, the state's criminalist testified that the Ohio State Highway Patrol Crime Lab follows the procedures in Ohio Adm.Code Chapter 3701–53 when testing urine specimens for both drugs and alcohol. For this reason, we analyze this case as if Ohio Adm.Code 3701–53–05 applied to drug *and* alcohol testing of urine specimens.

As noted above, the urine specimen in the present case arrived at the lab in Columbus three days after Rhoades mailed it. In light of *Cook*, we conclude that the urine specimen was "in transit" between the time that Rhoades mailed it on January 3, 1992 and the lab received it on January 6, 1992. Ohio Adm.Code 3701–53–05(F) does not require refrigeration while a urine specimen is "in transit." Thus, we find that the state substantially complied with Ohio Adm.Code 3701–53–05(F).

In his second argument, appellant claims that he was prejudiced by the admission of the urine test results because he is a diabetic and was having an insulin reaction at the time of his arrest. Appellant relies on *State v. Casaday* (1987), 40 Ohio App.3d 52, 531 N.E.2d 1325, where the court held that urine test results may be inadmissible even when there is "substantial compliance" with Ohio Adm.Code 3701–53–05(F). In *Casaday*, the parties presented conflicting expert testimony on whether Casaday's high glucose level in combination with a lack of refrigeration affected the blood-alcohol test results.

In the present case, however, appellant produced no evidence that diabetes or an insulin reaction can create the presence of marijuana in a urine specimen. Appellant also failed to produce any medical evidence demonstrating that he was actually having an insulin reaction at the time of the arrest. Because of the lack of evidence to support appellant's assertion that his diabetes skewed the test results, we cannot conclude that appellant was prejudiced in any way.

Since we find that the state substantially complied with Ohio Adm.Code 3701–53–05(F) and that the record does not establish the effects of diabetes on drug-urine tests, the test results were properly admitted. Accordingly, appellant's sole assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JONES, P.J., and WILLIAM W. YOUNG, J., concur.