[Cite as *State v. Neale*, 2012-Ohio-2530.]

COURT OF APPEALS
LICKING  COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon.  Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon.  W. Scott Gwin, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | Case No. 2011 CA 00090 |
| STEVE C. NEALE, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Licking County Court of
                                  Common Pleas Case No. 2010 CR 289


JUDGMENT:                         AFFIRMED

DATE OF JUDGMENT ENTRY:           June 4, 2012


APPEARANCES:

For Defendant-Appellant:                    For Plaintiff-Appellee:

THOMAS M. TYACK                             KENNETH W. OSWALT
JAMES P. TYACK                              Licking County Prosecuting Attorney
536 South High Street                       20 South Second Street, Fourth Floor
Columbus, Ohio  43215                       Newark, Ohio  43055

*Delaney, J.*

{¶1} Defendant-Appellant Steve C. Neale, Jr. appeals his conviction, following a jury trial, in the Licking County Court of Common Pleas on three counts of aggravated vehicular homicide (R.C. 2903.06(A)(1)(a)), three counts of vehicular homicide (R.C. 2903.06(A)(3)(a)), one count of aggravated vehicular assault (R.C. 2903.08(A)(1)(a)), one count of negligent assault (R.C. 2903.14(a)), and one count of operating a vehicle under the influence of alcohol (R.C. 4511.19(A)(1)(a) and (e)).

{¶2} The trial court sentenced Neale to an aggregate term of incarceration of ten years, followed by three years of postrelease control and a lifetime drivers' license suspension.

*FACTS AND PROCEDURAL HISTORY*

{¶3} On Sunday, June 15, 2008, just after midnight, Neale was driving a Chevy Avalanche truck northbound on State Route 310. At the intersection of Route 310 and Morse Road (CR 25), in Licking County, Ohio, Neale collided with a Saturn passenger car driven eastbound by Gabrielle Mayabb, instantly killing her front seat passenger Kevin Miller. Mayabb and a back seat passenger in the Saturn, Nicole Swigert-Moats, subsequently died from their injuries. Paul Davis, Jr., also a back seat passenger, was ejected from the Saturn and sustained serious injury. Davis survived the crash but with permanent injury.

{¶4} Neale was seen by a paramedic at the scene. Neale did not have any observable injury, and he signed an informed refusal form. Neale was interviewed at the scene by the investigating patrol officer. Field sobriety tests were conducted and Neale was arrested for driving under the influence. He was then transported to the

patrol station and a urine sample was obtained from Neale. The results subsequently indicated a finding of a concentration of 0.160 of one gram by weight of alcohol per one hundred milliliters of Neale's urine, in violation of the legal limit of 0.110 of one gram by weight of alcohol per 100 milliliters of urine.

{¶5}  On June 11, 2010, nearly two years from the date of the accident, Neale was indicted by the Licking County grand jury on thirteen counts as follows: Aggravated Vehicular Homicide (R.C. 2903.06(A)(1)(a)), Counts 1-3; Aggravated Vehicular Assault (R.C. 2903.08(A)(1)(a), Count 4; Aggravated Vehicular Assault (R.C. 2903.06(A)(2)(a), Counts 5-7; Aggravated Vehicular Assault (R.C. 2903.08 (A)(2)(b), Count 8; Vehicular Homicide (R.C. 2903.06(A)(3)(a), Counts 9-11; Negligent Assault (R.C. 2903.14(A), Count 12; and Driving Under the Influence (R.C. 4511.19(A)(1)(a) and/or (A)(1)(e), Count 13 (A) and (B).

{¶6}  Neale pled not guilty at arraignment on June 29, 2010.

{¶7}  On July 16, 2010, the state provided a bill of particulars indicating the charges were based upon Neale's intoxication and excessive speed at the time of the accident.

{¶8}  On August 31, 2010, Neale filed a motion to suppress/in limine regarding the field sobriety and urine test results. On October 29, 2010, Neale filed a motion in limine to exclude the testimony of the state's accident reconstruction expert Dr. Dennis Guenther. The same day, Neale filed a second, more detailed motion to suppress/in limine regarding the field sobriety and urine tests. A suppression hearing was held on February 18, 2011 and March 7, 2011. By judgment entry filed March 18, 2011, the trial court overruled the motions.

{¶9} Neale exercised his right to a jury trial which commenced on July 12, 2011. Upon hearing the evidence and deliberating, the jury found Neale guilty as to Counts 1, 2, 3, and 4. The jury was unable to reach a verdict with regard to Counts 5, 6, 7, and 8. The jury also found Neale guilty as to Counts 9, 10, 11, 12, 13(A) and (B).

{¶10} On July 29, 2011, Neale filed a motion for judgment of acquittal, or in the alternative, motion for a new trial. The trial court denied the motion by entry filed August 26, 2011.

{¶11} The trial court sentenced Neale on September 1, 2011, to a mandatory prison term of three years each on Counts 1, 2 and 3; one year on Count 4, and six months on Count 13. Counts 1, 2, 3 and 4 were run consecutively with each other and concurrently with Count 13, for an aggregate sentence of ten years. For purposes of sentencing, Counts 9, 10, 11 and 12 merged with Counts 1, 2, 3, and 4. The state dismissed the remaining counts.

{¶12} Neale filed a notice of appeal on September 2, 2011 and raises five assignments of error for our consideration:

{¶13} "I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS

{¶14} "II. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE'S PRIVATELY HIRED EXPERT TO TESTIFY

{¶15} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR OF LAW WHEN IT DENIED THE DEFENDANT'S REQUEST FOR JURY INSTRUCTIONS

{¶16} "IV. THE EVIDENCE WAS INSUFFICIENT TO FIND THE APPELLANT GUILTY (T.R. Vol. I-IV)

{¶17} "V.    APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (T.R. Vol. I-IV)

I.

{¶18}  First, Neale argues on appeal that the trial court should have suppressed the results of the horizontal gaze nystagmus test (HGN) conducted by the trooper at the scene.[1]   Neale also argues the trial court should have suppressed the results of the urine test for lack of substantial compliance with Ohio Department of Health (ODH) regulations as set forth in Ohio Administrative Code (OAC)  3701-53-05(F) and 3701-53-06.

{¶19}  "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.   The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Id., citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).  A reviewing court then applies the factual findings to the law regarding suppression of evidence.  An appellate court reviews the trial court's application of law de novo.  *State v. Anderson*, 100 Ohio App.3d 688 (4th Dist. 1995).

*HGN Test*

{¶20} The results of field sobriety tests are admissible at trial if the state presents clear and convincing evidence that the officer administered the tests in substantial compliance with the National Highway Traffic Safety Administration (NHTSA) standards.  See, R.C. 4511.19(D)(4)(b).

---

[1] On appeal, Neale does not challenge the results of the One-Leg Stand or Walk and Turn tests.

{¶21} The burden of proof in a motion to suppress the results of a field sobriety test is on the state once the defendant has made an issue of the legality of the test. *State v. Ryan*, 5th Dist. No. 02-CA-00095, 2003-Ohio-2803.

{¶22} Part of the state's burden includes demonstrating what the NHTSA standards are through competent testimony and/or by introducing the applicable portions of the NHTSA manual. In *State v. Boczar,* the Ohio Supreme Court held that HGN test results are admissible in Ohio without expert testimony, so long as substantial compliance with testing guidelines has been shown and a proper foundation has been established as to the administering officer's ability to administer the test and the officer's actual technique in administering the test. *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 28.

{¶23} In this case, Trooper Chad Maines testified at the suppression hearing as to his qualifications and training in conducting field sobriety testing, as well as to the NHTSA guidelines for HGN testing. He described how he performed the HGN test upon Neale and stated the test was performed in substantial compliance with the NHTSA guidelines. Maines stated Neale exhibited six of all possible six clues on the HGN test.

{¶24} On appeal, Neale does not identify any specific error with Trooper Maines' administration of the HGN test, in light of NHTSA guidelines, but nevertheless argues conditions at the scene warranted suppression.

{¶25} First, Neale claims the accident scene was littered with emergency vehicles with bright lights, including strobe lights. However, Maines testified he moved Neale away from the scene so there were no lights near the test area, nor did any vehicle pass the area during the test. If any light was present, Maines stated it was to

the backside of Neale. (Suppression Hearing T. at 54-55). Second, Neale claims that he was struck by the airbag upon impact and had injury to his nose. However, Maines stated Neale had no visible signs of injury to the nose and had not lost consciousness. (Id. at 51-52). Lastly, Neale claims that the trooper's hand shook while administering the test. Maines conceded that did in fact occur. (Id. at 102). Upon redirect, Maines stated the hand shake does not affect the test results. (Id. at 113).

{¶26} In its judgment denying Neale's motion to suppress, the trial court found "the specific field sobriety tests conducted by Trooper Maines were done in substantial compliance sufficient to comply with the requirements set forth by the State of Ohio for admissibility purposes." Judgment Entry, March 18, 2011.

{¶27} Upon review, we find the trial court properly overruled Neale's motion to suppress in regards to the HGN test as the testimony established compliance with the NHTSA guidelines.

<em>Urine Test</em>

{¶28} The results of an alcohol content test administered pursuant to R.C. 4511.19 may be admitted into evidence upon a showing that the test was administered in accordance with ODH regulations. R.C. 4511.19(D)(1)(b). In regards to the collection and handling of urine specimens, ODH promulgated OAC 3701-53-05(F) which states the "while not in transit or under examination, all blood and urine specimens shall be refrigerated." Without a showing of prejudice to a defendant, the results of a urine test administered in substantial compliance with OAC 3701-53-05 are admissible in a prosecution under R.C. 4511.19. *State v. Plummer*, 22 Ohio St.3d 292 (1986), at syllabus.

{¶29} In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 34, the Ohio Supreme Court limited "the substantial compliance standard set forth in *Plummer* to excusing only errors that are clearly de minimis. Consistent with this limitation, we have characterized those errors that are excusable under the substantial compliance standard as 'minor procedural deviations'." (Citation omitted.)

{¶30} Neale provided a urine sample to Trooper Maines at 2:25 a.m. on June 15, 2008. Maines witnessed the collection and then proceeded to place a sodium fluoride capsule in the sample for preservation. Maines packaged the sample for mailing and kept it in his possession until his shift ended at approximately 7 a.m. that day. En route home, he placed the package in the U.S. mailbox located at East Main Street in Newark.

{¶31} The sample was received by Ohio State Highway Patrol Crime Lab in Columbus, Ohio on June 18, 2008 at 10:40 a.m. and placed into a refrigerator. Later that day, at 1:35 p.m., the sample was removed from the refrigerator for logging into the computer and placed into the "log-in" refrigerator.

{¶32} On June 19, 2008, criminalist Mark Hiatt removed the sample from the log-in refrigerator at 10:05 a.m. and took it to the lab space for alcohol testing; the area is not refrigerated. Sometime between 10:05 a.m. and 2:20 p.m., Hiatt pulled two 100-microliters aliquot of sample and placed both into the gas chromatography testing instrument. Hiatt did not observe any indication of deterioration in the urine, such as any type of bacterial growth. He then placed the remaining sample into the "toxicology" refrigerator at 2:20 p.m. The testing in the machine actually occurred at 4:31 p.m. for the first sample and indicated a finding of .160 grams by weight of alcohol per 100

millimeters of urine.  The second sample was tested at 7:44 p.m. and indicated a finding of .161 grams. Hiatt testified that duplicate testing is performed to ensure quality results. Per lab policies, the lower of the two numbers is the reported value.

{¶33}  Neale first challenges the admissibility of the urine test results because the state failed to properly refrigerate the sample after it was collected.  Specifically, Neale argues the sample was unrefrigerated while in the custody of Trooper Maines, for approximately four and half hours, and then roughly another six and half to nine hours and half hours when the sample was not refrigerated while awaiting testing by Hiatt at the lab.

{¶34}  As an initial matter, both Neale and the state agree that the placement of the urine sample in the mail box until its receipt by the lab is clearly "in transit" within the contemplation of OAC 3701-53-05(F).  The state, however, contends that the time between when the sample was given until it was mailed also constitutes "in transit". Neale argues Maines' retention of the urine sample in an unrefrigerated state for over four and half hours before mailing was a violation.

{¶35}  In *State v. Plummer*, 22 Ohio St.3d 292 (1986), the Ohio Supreme Court found no violation of OAC 3701-53-05(F) when a urine specimen went unrefrigerated for a period of one hour and twenty-five minutes prior to mailing, and again went unrefrigerated for a period of three to four hours after the specimen had been delivered to the laboratory. See also, *State v. Mayl,* 106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 50, fn. 2 (concluding there was substantial compliance with OAC 3701-53-05(F) where blood sample was not refrigerated for nearly one hour and 45 minutes); *State v. Price*, 11th Dist. No. 2007-G-2785, 2008-Ohio-1134, ¶ 26 (holding that retention of a blood

specimen in an unrefrigerated state for six hours before mailing not a violation); *State v. Schell,* 5th Dist. CA-7884, 1990 WL 83992 (June 18, 1990) (blood sample unrefrigerated for five hours is within range of substantial compliance). But see, *State v. DeJohn*, 5th Dist. No. 06-CA-16, 2007-Ohio-163, (finding that failure to refrigerate urine sample for 17 hours while in possession of trooper before mailing was not a slight delay or minor procedural deviation).

{¶36} While we do not characterize the pre-mail time period as "in transit", we find there was substantial compliance with OAC 3701-53-05(F) as, pursuant to *Plummer* and *Mayl*, supra, a few hours where the sample was not refrigerated was still sufficient to constitute substantial compliance. In addition, the time period the test sample was removed from the refrigerator until the testing process was concluded, in this court's view, would constitute "under examination" for purposes of the regulation.

{¶37} Neale also attacks the reliability of the urine test results because neither Maines or Hiatt knew how much sodium fluoride was in the preservative capsule, and Maines did not know that "SF" stood for sodium fluoride. However, OAC 3701-53-05 does not set forth, nor does Neale identify, any ODH requirement regarding sodium fluoride.

{¶38} Even though we have determined that the state demonstrated substantial compliance, and thus, the urine test results were admissible, Neale argues he was prejudiced by less than strict compliance. He contends that at trial he presented the testimony of Dr. Robert Belloto to demonstrate the urine test results were not reliable. Dr. Belloto testified that the proper amount of sodium fluoride improves the quality of the

sample and prevents the fermentation of any sugar to ethanol at room temperature, if the sample is contaminated with yeast or bacteria.

{¶39} At trial, the trial court correctly determined that Dr. Belloto's testimony went to the weight of the evidence, not the admissibility, of the urine test results. We agree.   In addition, Dr. Belloto's testimony was not presented at the suppression hearing and therefore, the trial court did not consider it when ruling upon the motion to suppress.

{¶40} Finally, Neale contends the urine sample was not properly tested, pursuant to OAC 3701-53-06, claiming the state did not demonstrate the crime lab was properly certified.

{¶41} Ohio Adm.Code 3701-53-06 sets forth, in relevent part, the laboratory requirements to ensure the accuracy of bodily substance test results, as follows:

{¶42}   * * *

{¶43} "(B) The laboratory shall successfully complete a national proficiency testing program using the applicable technique or method for which the laboratory personnel seek a permit under rule 3701-53-09.

{¶44} "(C) The laboratory shall have a written procedure manual of all analytical techniques or methods used for testing of alcohol or drugs of abuse in bodily substances. Text books and package inserts or operator manuals from the manufacturer may be used to supplement, but may not be used in lieu of the laboratory's own procedure manual for testing specimens.

{¶45} "(D) The designated laboratory director shall review, sign, and date the procedure manual as certifying that the manual is in compliance with this rule. * * * ".

{¶46} At the suppression hearing, Hiatt testified he is a certified lab technician by ODH for the gas chromatography method to test alcohol. He further testified that he is employed by the Ohio State Highway Patrol Crime Lab. Hiatt stated the lab is required to have a written procedure manual present when testing and, in fact, the alcohol procedure manual was present in the same work space as the samples that are tested. He further stated that the lab is subject to the proficiency examinations and he established through the affidavit [2] of the Director of Toxicology that the lab satisfies all the quality standards set forth in OAC Chapter 3701. Although general in nature, we find the evidence established substantial compliance with the lab requirements of 3701-53-06. In fairness to the state, the motions to suppress filed by Neale were equally as general and only specifically raised the issue as to whether the manual was or was not present in the lab testing area.

{¶47} For all of the reasons set forth above, Neale's first assignment of error is overruled.

II.

{¶48} Second, Neale argues on appeal that the trial court erred in admitting the testimony of the state's accident reconstruction expert Dr. Dennis Guenther.[3] Neale claims that Dr. Guenther made calculations "based upon assumptions that were not observed personally by him or for which there was any evidence admitted at trial" specifically, "that the Saturn was stopped at the stop bar." Appellant's Brief at p. 17.

---

[2] The affidavit, signed on May 12, 2008 by the Lab Director, preceded the specific testing by Hiatt on June 19th, however, we still conclude substantial compliance was demonstrated by the state.
[3] Neale does not dispute Dr. Guenther's qualifications as an expert in accident reconstruction under Evid.R. 702.

{¶49} Evid.R. 703 provides that: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶50} Further, Evid.R. 704 provides that: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

{¶51} Evidentiary rulings are exercised within the broad discretion of the trial court and will not be reversed on appeal unless there is an abuse of discretion that materially prejudices a defendant. *State v. Long*, 53 Ohio St.2d 91, 98 (1978).

{¶52} Dr. Guenther was retained by the state to review the crash report, the 2008 accident reconstruction report by Ohio State Patrol Sgt. Frank Horvath, the CDR (also referred to as the "black box") crash data of the Avalanche and the Saturn [4], and photographs of the scene and intersection.

{¶53} Dr. Guenther issued a report on June 1, 2010 to which he testified at trial. Based upon materials he reviewed, Dr. Guenther concluded that the impact speed of the Avalanche was 50 to 53 mph and the impact speed of the Saturn was 18 to 19 mph. The CDR crash data of the Avalanche also revealed that Neale had set his cruise control at 65 mph before he applied his brake for approximately one second prior to impact. Based upon the calculated speed of the Saturn, Dr. Guenther opined that the Saturn had stopped at the traffic light and then accelerated from its stopped position to its impact position.

---

[4] No usable data was obtained from the Saturn box.

{¶54} Importantly, Dr. Guenther offered no opinion as to which unit failed to yield for a red traffic signal. Instead Dr. Guenther reconstructed the accident in his report, as follows:

{¶55} "The travel time of the Saturn from its stop position to its impact position was about 4.43 seconds. The Avalanche had about 1 second of braking time. Assuming Mr. Neale had a perception-reaction time of 1.5 seconds, he should have been able to apply the brakes sooner and had a least 1 to 2 more seconds braking time. Based on these numbers, we conclude that Mr. Neale's perception-reaction time most likely was about 3 to 3.5 seconds, which was longer than the 1.5-second perception-reaction time for an average driver. If he had 1 to 2 more seconds of braking time, the velocity of the Avalanche at its impact position would have been lowered to 18.5 to 37.1 mph.

{¶56} "Had Mr. Neale been traveling at the speed limit of 55 mph instead of 65 mph before braking, the Saturn definitely would have crossed SR 310 and it would have been on the east side of the intersection before Mr. Neale's Avalanche reached the intersection and this accident would have been avoided.

{¶57} "Mr. Neale had set his vehicle at a cruise control of 65 mph when his vehicle was traveling on SR 310 and approaching the traffic light at the intersection with CR 25. At 5 seconds prior to impact, his Avalanche was still traveling at 65 mph when it was about 460 feet from its impact position. The posted speed limit on SR 310 was 55 mph. Based on these facts, we conclude that Mr. Neale was traveling at a dangerously and excessive speed of 65 mph immediately prior to the impact with the Saturn."

{¶58} It is clear from the record and to this court that the data upon which Dr. Guenther arrived at his opinion was based upon physical evidence admitted at trial such as tire marks on the pavement, scene photographs of the damaged vehicles, and CDR crash data. From this information, Dr. Guenther employed principles of accident reconstruction such as drag coefficients of friction and perception/reaction time, in conjunction with the physical evidence, to determine impact speed, impact location, departure locations and post-impact travel distance.

{¶59} Neale contends Dr. Guenther improperly "assumed the Saturn was stopped" because the state's witness and sole surviving occupant of the Saturn, Paul Davis, Jr. , testified he had no memory of the car stopping for a red light and he thinks the Saturn was going about 30 to 35 mph at impact. In addition, Neale has always maintained that he had a green light and the Saturn ran the red light.

{¶60} However, we find such argument goes to the weight of the evidence and not its admissibility. The credibility and reliability of Davis and Neale's testimony was at issue at trial for several reasons. Davis was in critical condition and in a coma for two weeks after the accident and has a lasting brain injury which affects his memory. He also stated his recollection of the crash comes, in part, from his dreams. At trial, Neale was confronted with several inconsistencies between a signed statement he gave to Trooper Maines and his trial testimony. For example, Neale told the trooper he was going about 45 to 50 mph on SR 310 and that he was wearing a seat belt. However, the vehicle data indicated Neale's cruise control was set at 65 mph and the seat belt was not engaged. He told the trooper he was coming from a friend's house in Pataskala, when in fact he had left a bar. He also stated he had four to five beers at an

afternoon golf outing and none that evening, but then stated he stopped drinking at 8:00 or 8:30 p.m.

{¶61}   We find unavailing Neale's claim that Dr. Guenther did not have any evidence that the Saturn possibly stopped before proceeding into the intersection. Accordingly, because Dr. Guenther's opinion was based on facts admitted into evidence, such as the scene measurements and photographs, his testimony was admissible under Evid.R. 703.

{¶62}  We overrule Neale's second assignment of error.

III.

{¶63}  Neale's third argument claims that the trial court failed to adequately instruct the jury on proximate cause with respect to Counts 1-3, aggravated vehicular homicide.

{¶64}  This court reviews a trial court's refusal to give a specific jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64 (1989).  As a general rule, a trial court should give a requested charge that is pertinent to the case, states the law correctly, and is not covered by the general charge.  *State v. Madrigal*, 87 Ohio St.3d 378, 394 (2000).

{¶65}  Pursuant to Crim.R. 30, parties may file written requests for specific jury instructions.   Neale filed proposed jury instructions regarding: cause (Ohio Jury Instruction-Criminal 417.23), natural consequences (OJI-CR 417.23), assuming others will obey the law (OJI-CV 401.31), intervening cause, recklessly (OJI-CR 417.17), proximate cause, foreseeability, negligently, due care, substantial, and risk (OJI-CR 417.19).

{¶66} The trial court instructed the jury pursuant to OJI 417.17, 417.19, 417.23 and 417.25 as to recklessly, cause, natural consequences, intervening cause, and risk. The trial court also accepted Neale's instructions on the issue of negligently, due care and substantial lapse.

{¶67} However, the trial court did not accept Neale's requested instructions regarding independent intervening causes and natural consequences that suggested that Neale could be relieved from criminal liability if the Saturn had run the red light, despite Neale's intoxication and speed. Neale's instructions were based upon civil jury instructions and/or language not found in OJI. Neale did object to the trial court's instructions. (T. at 952).

{¶68} We find the trial court did not err in refusing Neale's proposed jury instructions on these issues because they are not applicable in a criminal proceeding involving vehicular homicide. See, *State v. Schroeder*, 5th Dist. No. 10CA37, 2011-Ohio-2169, ¶ 150, citing *State v. Langenkamp*, 137 Ohio App.3d 614, 2000-Ohio-1831 (" * * * it is well settled that any contributory negligence of the decedent cannot be a defense to vehicular homicide, unless it is the sole proximate cause of the accident, (citations omitted)."

{¶69} In addition, the proposed instructions are directly contrary to OJI 417.25 (1) and (2) which states:

{¶70} "1. OTHER CAUSES NOT A DEFENSE. There may be one or more causes of an event. However, if a defendant's act or failure to act was one cause, then the existence of other causes is not a defense.

{¶71} "2. INTERVENING CAUSES. The defendant is responsible for the natural consequences of the defendant's unlawful act or failure to act, even though death or physical harm to person was also caused by the intervening act or failure to act of another person."

{¶72} Finally, Neale argues the trial court erred in refusing to accept his proposed instructions as to foreseeability, as set forth in this court's opinion in *State v. Barron*, 5th Dist. No. 05CA 4, 2005-Ohio-6108, ¶ 15 (citations omitted).  However, we find the proposed instruction was covered by the court's instruction on causation, natural consequences and risk.

{¶73} The record reflects the trial court's instructions on causation were taken nearly verbatim from OJI.  Therefore, we cannot find that the trial court abused its discretion, and the third assignment of error is overruled.

IV. and V.

{¶74} In the fourth and fifth assignments of error, Neale argues the evidence was insufficient to support the convictions which require causation, and that those convictions are against the manifest weight of the evidence.

{¶75} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶76} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts a thirteenth juror and "in reviewing the entire record,

weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52.

{¶77} As stated earlier, Neale was convicted of three counts of aggravated vehicular homicide (R.C. 2903.06(A)(1)(a)), three counts of vehicular homicide (R.C. 2903.06(A)(3)(a)), one count of aggravated vehicular assault (R.C. 2903.08(A)(1)(a)), one count of negligent assault (R.C. 2903.14(a)). The underlying violations to these charges were intoxication and/or speeding as noted in the indictment and bill of particulars.

{¶78} In this case, the state established causation through the formulation of the accident with the expert assistance of Dr. Guenther. He testified at trial that Neale's excessive speed and intoxication impacted stopping distance and normal reaction time. Dr. Guenther determined, based upon physical evidence, that the Saturn was traveling approximately 18 mph at the time of impact. He concluded based upon a 1999 Saturn's build that this acceleration was from a stopped position at the stop bar on Morse Road. Also, using data retrieved from the Avalanche's box, Dr. Guenther conducted a time distance study based upon the last four to five seconds prior to the impact point. He opined that had Neale been going slower than 65 mph prior to braking, the impact would not have occurred, even with a normal reaction time of 1.5 seconds.

{¶79} In addition, Dr. Guenther further opined that alcohol can negatively affect reaction time upwards to 2 to 4 times than normal and that this lessened Neale's ability to brake sooner, which caused impact at a greater speed.

{¶80} At trial, the state also presented the testimony and June 27, 2008, accident reconstruction report of Sgt. Frank Horvath of the State Highway Patrol. His analysis revealed that the Saturn was traveling between 26-29 mph at impact and the Avalanche was traveling between 47 and 52 mph.

{¶81} Dr. Guenther disagreed with Sgt. Horvath's conclusions for several reasons: first, the co-efficient of friction Sgt. Horvath used was too low for the side sliding and yawing of the Saturn in the gravel area; second, the travel distance of the Saturn on the pavement after the impact was low because Sgt. Horvath apparently assumed the right side tires left the two yaw marks on the pavement, however, the tire marks were left by the left side tires; third, because the state investigator assumed the two yaw marks were left by the right side tires of the Saturn, instead of the left side tires, he had the impact location too far north of the centerline. As a result of these errors and others, the calculated speed values of Sgt. Horvath were incorrect, according to Dr. Guenther.

{¶82} The state also presented the testimony Paul Davis, Jr. Neale contends Davis' testimony "annihilates" Dr. Guenther's testimony because he has no memory of the car stopping for the red light.

{¶83} However, viewing the evidence most favorably to the state, we find sufficient evidence supports a finding that the deaths of Kevin Miller, Gabrielle Mayabb

and Nicole Swigert-Moats and injury to Paul Davis, Jr. were the proximate result of Neale's actions.

{¶84} The results of the field sobriety tests, urine test results and Dr. Guenther's testimony support that a rational trier of fact could have found the essential elements of aggravated vehicular homicide, vehicular homicide, vehicular assault and negligent assault beyond a reasonable doubt.

{¶85} Neale argues that his convictions were against the manifest weight of the evidence. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the others. *State v. Clemons*, 82 Ohio St.3d 438, 444 (1998). In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the jury's resolution of conflicting testimony. *Thompkins*, 78 Ohio St.3d, at 387.

{¶86} Neale argues that his testimony establishes he had the green light and it was not foreseeable that the Saturn would run the red light. His defense expert, Jack Holland, also testified at trial and challenged both the conclusions of Dr. Guenther and Sgt. Horvath. Holland opined that neither the state patrol nor Dr. Guenther adequately evaluated the operation of the traffic loop detectors and traffic signals at the intersection. He stated that the signal will remain green for northbound State Route 310 until triggered to cycle by an eastbound vehicle arriving at a loop. Given the phasing of the light and Mr. Davis' testimony that the Saturn did not stop, Mr. Holland concluded that the light was red and would have stayed red for eastbound traffic. He also testified

that if the speed of the Saturn was 26-29 mph as calculated by Sgt. Horvath, it was not from a dead stop.

{¶87} Holland noted the major difference between Sgt. Horvath's report and Dr. Guenther's report was that Dr. Guenther reduced the impact speed of the Saturn to show that it was possible for the Saturn to stop at the stop bar and to accelerate to the area of impact. Dr. Guenther did this by using an approach angle of the truck at 85 degrees, whereas the patrol had it at 89-90 degrees. The five degree difference had the effect of reducing the speed of the Saturn at impact. In addition, Dr. Guenther had the angle of departure for the Saturn at 73 degrees, but the patrol had it at 65 degrees. So the combination of changing the angle of approach for the Avalanche and the departure angle of the Saturn accounts for the difference between Sgt. Horvath's speed calculations and Dr. Guenther's. The differences in the angles appear to be based upon the interpretation of the yaw marks belonging to the left or right tires, as noted earlier.

{¶88} Holland put "more faith" in Sgt. Horvath's angle calculations to determine speed at impact, although he did not dispute Dr. Guenther's calculation of speed based upon his input values and interpretation of the yaw marks.

{¶89} The jury in this case was free to accept or reject any and all of the evidence offered at trial and assess the witnesses' credibility. Following a review of the entire record, we find no basis to believe that the jury clearly lost its way in convicting Neale or that a manifest injustice of justice occurred. Although the evidence in this case was highly technical at points, the theories of both sides were clearly laid out for the jury in a straightforward, understandable fashion.

{¶90} Accordingly, we find the convictions were not against the manifest weight of the evidence.

{¶91} The fourth and fifth assignments of error are overruled.

{¶92} The judgment of the Court of Common Pleas, Licking County, Ohio is affirmed.

By: Delaney, P.J.

Gwin, J. and

Edwards, J. concur.

HON. PATRICIA A. DELANEY

HON. W. SCOTT GWIN

HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| STEVE C. NEALE, JR. | : | |
| | : | |
| Defendant-Appellant | : | Case No. 2011 CA 00090 |
| | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed.  Costs assessed to appellant.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JULIE A. EDWARDS