[Cite as *State v. Schneider*, 2013-Ohio-4789.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120786 |
| | | TRIAL NO. 12TRC-13371(A) |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| KARL SCHNEIDER, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  November 1, 2013

*John P. Curp*, City Solicitor, *Charles Rubenstein*, City Prosecutor, and *Christopher Liu*, Assistant City Prosecutor, for Plaintiff-Appellant,

*Matthew T. Ernst*, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1} The state of Ohio appeals the judgment of the Hamilton County Municipal Court granting a motion to suppress the results of urine-alcohol testing in a prosecution for operating a vehicle with a prohibited urine-alcohol concentration. We reverse the trial court's judgment and remand the case to the trial court for further proceedings.

{¶2} At about 2:00 a.m., on March 18, 2012, Ohio State Trooper Chris Sanger arrested defendant-appellee Karl Schneider for operating a motor vehicle while intoxicated ("OVI") and transported him to one of the districts of the Cincinnati Police Division. At 3:15 a.m., Trooper Sanger obtained a urine specimen from Schneider in a clean container. He sealed the container and labeled it with his own name, Schneider's name, and the date and time of the collection. He completed a property-control form indicating that the method of transport for the container was "by hand."

{¶3} Trooper Sanger testified that he was required to transport the urine specimen to his assigned highway patrol post in Batavia, Ohio, where he had to complete paperwork and place the specimen in the mail.

{¶4} Shortly after obtaining Schneider's urine specimen, Trooper Sanger's shift ended. His next shift began at 10:00 p.m., at the Batavia post. Upon his arrival at the post, he completed paperwork and mailed Schneider's urine specimen to the patrol's crime lab in Columbus, Ohio. He noted on the property-control form that the method of transport was "by hand to US mailbox in Batavia, Ohio."

{¶5} Trooper Sanger testified that he had maintained the container in his possession from the time he collected it to the time that he mailed it. He said that the specimen had not been refrigerated while it was in his possession.

{¶6} Emily Adelman, a criminalist at the patrol's crime lab, testified that the lab had received Schneider's urine specimen from the United States mail on March 22, 2012, at 12:34 p.m. She conducted an alcohol analysis on the specimen on March 29, 2012. The

examination revealed that Schneider's urine specimen contained 0.239 grams by weight of alcohol per one hundred milliliters of urine, in excess of the statutory limit set forth in R.C. 4511.19(A)(1)(e). According to Adelman, the specimen had been kept in refrigeration at the lab, except during her analysis.

{¶7} At the suppression hearing, defense counsel argued that the state had failed to establish that the urine specimen had been refrigerated while it was not under examination or in transit as required by Ohio Adm.Code 3701-53-05(F). Defense counsel pointed to the evidence that the trooper had not refrigerated the specimen between its collection at 3:15 a.m., and its mailing at 10:00 p.m., a period of 18 hours and 45 minutes. The trial court overruled the motion upon its finding that the trooper had substantially complied with the regulation. In addition, the court determined that Schneider had suffered no prejudice as a result of the trooper's delay in mailing the specimen.

{¶8} Then defense counsel asked the court to reconsider its decision. Following a hearing, the trial court granted the motion to suppress the results of the alcohol analysis on Schneider's urine specimen.

{¶9} The state now appeals. In a single assignment of error, the state argues that the trial court erred by suppressing the urine-test results.

{¶10} Appellate review of a ruling on a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. If competent, credible evidence supports the trial court's findings of fact, then the appellate court must accept those findings as true. *Id.* "[T]he appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶11} Where a defendant challenges the validity of alcohol-test results in a motion to suppress, the state has the burden to show that the test was administered in substantial compliance with the regulations prescribed by the Department of Health ("DOH"). *Id.* at ¶

3

24. Once the state has satisfied its burden, the burden shifts to the defendant to rebut the presumption of admissibility by demonstrating that he was prejudiced by the state's failure to strictly comply with the regulations. *Id.*, citing *State v. Brown*, 109 Ohio App.3d 629, 632, 672 N.E.2d 1050 (4th Dist.1997).

{¶12} In *State v. Plummer*, 22 Ohio St.3d 292, 294, 490 N.E.2d 902 (1986), the Ohio Supreme Court recognized that strict compliance with DOH regulations "is not always realistically or humanly possible." The court said that "there is leeway for substantial, though not literal, compliance with such regulations." *Id.* The court later limited the *Plummer* substantial-compliance standard to excusing errors that are "clearly de minimis," or that are "minor procedural deviations." *See Burnside* at ¶ 34.

{¶13} The regulation at issue in this case, Ohio Adm.Code 3701-53-05(F), provides: "While not in transit or under examination, all blood and urine specimens shall be refrigerated." The regulation does not define "in transit" or set forth any time limitation for a specimen to be in transit, or to be unrefrigerated, for that matter.

{¶14} In this case, the trial court determined that Schneider's urine specimen "was not in transit as long as the officer is holding it." But Ohio Adm.Code 3701-53-05(F) contains no such limiting language. Nor does the regulation limit the term "in transit" to mean "in the mail."

{¶15} In general, Ohio courts agree that a urine or blood specimen is "in transit" for purposes of Ohio Adm.Code 3701-53-05(F) for at least the time that it is placed in the mail until the time that it is received by the testing facility, even if the mailing process itself takes several days. For example, in *State v. Hurst*, 4th Dist. Washington No. 08CA43, 2009-Ohio-3127, the Fourth Appellate District rejected the appellant's argument that the police should not have mailed a urine sample on a Friday, thereby causing the sample to go unrefrigerated until the crime lab received it the following Monday. *See State v. Cook*, 82 Ohio App.3d 619, 612 N.E.2d 1272 (12th Dist.1992) (urine specimen was "in transit" for the three-day period from the time it was mailed until the lab received it); *State v. Cook*, 5th

Dist. Stark No. CA-8708, 1992 Ohio App. LEXIS 4022 (Aug. 3, 1992) (blood specimen was "in transit" for the three days it was in the mail). In one instance, a court held that the state had substantially complied with the regulation where a urine specimen was unrefrigerated for the seven and one-half days that it was in the mail. *See State v. Partin*, 12th Dist. Warren No. CA2010-04-040, 2011-Ohio-794. In another case, *State v. Mullins*, 4th Dist. Ross No. 12CA3350, 2013-Ohio-2688, the state limited itself to a narrow definition of the term when it stipulated that the defendant's urine sample "was not placed in the mail (transit)" until 12 hours had passed from the time that the sample had been taken.

{¶16} Schneider directs us to *State v. DeJohn*, 5th Dist. Perry No. 06-CA-16, 2007-Ohio-163, where the Fifth Appellate District held that the state had failed to demonstrate substantial compliance with Ohio Adm.Code 3701-53-05(F) because the testimony adduced at the suppression hearing established that the suspect's urine sample "was not in transit, not under examination, and was not refrigerated for over seventeen (17) hours."

{¶17} However, as the state points out, the facts of the present case are distinguishable from *DeJohn*. The evidence from the suppression hearing established that the unrefrigerated period occurred while Schneider's urine specimen was in transit from the Cincinnati police district to the Batavia patrol post. The trooper was required to take the specimen to his assigned post where he needed to complete paperwork and mail it. And he documented his method of transit for the specimen from the Cincinnati district to his patrol post as being "by hand."

{¶18} We do not believe that the term "in transit" as used in Ohio Adm.Code 3701-53-05(F) is so narrow as to include only the time that a blood or urine specimen is in the mail. Certainly the regulation contemplates other modes of transportation, as well as reasonable periods of time that a specimen is unrefrigerated. To read the term "in transit" to mean "in the mail" would not have allowed for the trooper to transport the unrefrigerated specimen from the Cincinnati district to his patrol post, or even from his post to the post office. Moreover, it is undisputed that a specimen is generally not refrigerated while in the

mail; thus, the delay in mailing Schneider's specimen was inconsequential, and a minor deviation from the requirements of the regulation.

{¶19} Therefore, we hold that the trial court erred by finding that the state did not demonstrate substantial compliance with Ohio Adm.Code 3701-53-05(F). Moreover, because the trial court determined that Schneider had suffered no prejudice as a result of the lack of strict compliance, we hold that the trial court erred by suppressing the results of the urine-alcohol testing.

{¶20} Therefore, we sustain the assignment of error. We reverse the judgment of the trial court and remand the cause for further proceedings.

Judgment reversed and cause remanded.

HILDEBRANDT, J., concurs.
HENDON, P.J., dissents.

HENDON, P.J., dissenting.

{¶21} With all due respect to my colleagues, I do not agree that the state demonstrated substantial compliance with Ohio Adm.Code 3701-53-05(F). In my opinion, the trial court correctly determined that the urine specimen was not "in transit" for purposes of the regulation during the nearly 19-hour period that it was in the trooper's possession.

{¶22} The regulation contemplates that urine or blood specimens will not, and probably cannot, be refrigerated at all times. So it allows for those times that specimens may be out of the state's control, such as when they are in the mail, or when specimens are being analyzed. So to the extent that a few hours pass before a police officer relinquishes control of a specimen to the post office, courts have deemed those pre-mail time periods to be reasonably compliant with the regulation. As an example, this court has found that the state substantially complied with the regulation where a blood sample was not refrigerated

for approximately two hours and five minutes. *State v. Hutson*, 1st Dist. Hamilton Nos. C-060274, C-060275, and C-060276, 2007-Ohio-1178. And other Ohio courts have found substantial compliance with the regulation where urine or blood specimens were unrefrigerated for up to six hours between collection and mailing to the lab. *See State v. Plummer*, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986) (one and one-half hours); *State v. Neale*, 5th Dist. Licking No. 2011 CA 00090, 2012-Ohio-2530 (four and one-half hours); *State v. Price*, 11th Dist. Geauga No. 2007-G-2785, 2008-Ohio-1134 (six hours); *State v. Schell*, 5th Dist. Stark No. CA-7884, 1990 Ohio App. LEXIS 2459 (June 18, 1990) (five hours). The 19-hour period with no refrigeration in this case is three times greater than the longest of these pre-mail periods.

{¶23} Consequently, I would hold that the trooper's control of the unrefrigerated urine specimen for nearly 19 hours from its collection to its mailing did not constitute a minor procedural deviation. Because the state did not demonstrate that it had substantially complied with the regulation, I would affirm the trial court's judgment. Therefore, I respectfully dissent.


Please note:

   The court has recorded its own entry on the date of the release of this opinion.